**Herman B. WAGNER, Plaintiff,**

**v.**

**Edwin L. REYNOLDS, Acting Commissioner of Patents, Defendant.**

**Civ. A. No. 2852–63.**

United States District Court

District of Columbia.

June 10, 1965.

Keith Misegades, Washington, D. C., for plaintiff.

Clarence W. Moore, Sol. U. S. Patent Office, Washington, D. C., for defendant.

JACKSON, District Judge.

This is a civil action brought pursuant to 35 U.S.C. § 145 seeking judgment of this Court authorizing the defendant, Acting Commissioner of Patents, to issue Letters Patent of the United States containing claims 4, 6, 7, 10, 11, 12, 14, 15, 16, 17, 18, 20 and 21 of an application Serial No. 635,144, entitled "Synthetic Absorptive Agent", filed January 22, 1957, by the plaintiff, Herman B. Wagner.

The invention is described by the plaintiff in his application as follows:

"This invention relates to solid state substances characterized by a very fine, microcapillary, porous internal structure, and to new methods that I have devised for the manufacture of such substances * * *

* * * First, I select a solid, parent substance, hereinafter referred to as a matrix; the matrix possesses a porous internal structure which itself is characterized as suitable for absorptive purposes * * *

* * * Second, I saturate the matrix with a fluid substance capable of conversion to a permanently solid state. The liquid will be referred to as a casting liquid and upon conversion it will be referred to as a cast body or a casting * * *

* * * Third, I dissolve the matrix in a solvent which is a solvent for the matrix but in which the cast body is not appreciably soluble * * *

\* \* \* In addition to diatomaceous earth, other natural matrix materials such as limonite and pumice may be used. Other prepared matrices beside silica gel and alumina are available such as those obtained by the dehydration of hydrous metal oxide gels such as those of magnesium, titanium and zinc \* \* \*

\* \* \* Beside the resinous material included in the above examples (epoxy resins, polyester, methyl methacrylate) numerous other polymerizable resinous materials are available as casting liquids \* \* \*

\* \* \* Selection of the solvent (examples-hydrofluoric acid, sulfuric acid) for dissolving the matrix material also, is subject to extensive selection."

Claims 10 and 21, considered illustrative by the Board of Appeals, read as follows:

10. A process for forming a microcapillary body which comprises obtaining a microcapillary matrix body, substantially saturating the capillary passages of the matrix with a fluid resin, converting the casting fluid in situ to a solid and removing the matrix from the cast solid to leave a cast structure substantially reproducing the voids of the matrix.

21. A self-sustaining cast body of organic resin substantially reproducing the voids of a microcapillary matrix, said voids being of the order of 100 A.° and below, the void space of the cast body amounting to 35 to 70% of the total volume of said body.

The Patent Office tribunals rejected all the claims over a United States patent to Clasen, No. 3,007,896 (1961) and a United States patent to Roche, No. 2,-805,208 (1957).

The Clasen patent relates to an improved method for carrying out poly-reactions, such as poly-merizations, poly-additions and poly-condensations. It is based on a recently discovered phe-nomenon having to do with certain crystalline lattices. It is widely known that some, but not all, chemical compounds have their molecules arranged in a crystalline pattern. The most common form of crystal formation takes place as crystals grow from a solution saturated with crystal forming substances. The crystalizing substances arrange themselves in regular crystalline form to form a lattice. Some of these lattices are sufficiently open in character so as to permit smaller foreign molecules to lodge in the open-work of the lattices. This framework of the lattice may be in the form of channels, cages or layers.

In Clasen, urea, which normally has a tetragonal lattice structure, recrystalizes in a hexagonal arrangement in the presence of straight chain hydrocarbons and certain of their derivatives to form channels in which the hydrocarbons are received. Large linear molecules are built up in the channels and become linked together at their ends. After the reaction the channel forming crystals are removed by dissolving or melting. The patent states that if excess urea is used, porous polystyrene is obtained.

The Roche patent is directed to the production of a sponge formed of a synthetic resinous substance which does not normally produce a form—foaming being the obvious first choice of making a sponge. The inventor begins with an original sponge made from an easily foamable material such as urea-formaldehyde having a pore size of .2 to .7 mm. Next, the original sponge is impregnated with a solution of a rubber-like material of exceptional chemical resistance. Most of the inner surfaces of the cell walls are coated with the rubber-like material. The coating is of approximately the same thickness as the wall on which it is deposited. The article is then heated to cure or set the added coating. The original sponge has now served its purpose and may be removed. It may be crushed, since it is brittle, and the internal coating (which is now also a sponge) is rather elastic. It may be converted into a char since the new sponge is much more heat

resistant, or it may be dissolved away by acid since the new sponge is quite resistant chemically. The result is a new sponge which is a replica of the original, but which is made of different material and which has pores slightly smaller than the original. The product has a pore size from 2,000 to 10,000 times as great as that of the plaintiff's product.

The Board of Appeals refused the claims on the theory that the differences between the subject matter sought to be patented and the prior art were such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art. 35 U.S.C. § 103.

At trial, the plaintiff's efforts were devoted to showing that the differences between the language of his claims and the teachings of Clasen and Roche would not have been obvious within the meaning of the statute.

As to the Clasen patent, testimony on behalf of the plaintiff showed that upon dissolving the urea, Clasen is left with a series of rubber bands, thread-like but of molecular dimensions. Since there is nothing to sustain these fibrils, they apparently collapse in a conglomerate mass lacking in pore structure. Further, it was shown that the limitation of 35 to 70% of void space in the cast body—as required by the claims—is not met: that in fact there is no cast body.

With respect to the Roche patent, the plaintiff's evidence demonstrated that while Roche's process does obtain a self-sustaining cast body, the voids in the body are 500,000 times larger than the voids in the body of the plaintiff's product. Moreover, the Roche process reproduces the *matrix itself* rather than reproducing the *voids* in the matrix as required by the claims.

Finally, the plaintiff's evidence revealed that the limitation in the claims that the void space of the cast body be between 35 and 70% of the total volume of the body was not met by Roche since Roche's percentage was much higher.

The Patent Office, in response to plaintiff's evidence on the Clasen patent, relied upon the mention in that patent of the possibility that a pore structure could be obtained by utilizing an access of urea.

With respect to the Roche patent, the Patent Office argued·that it was possible for Roche to entirely fill the pores of his matrix with resin.

■ The Court does not believe the evidence adduced by the Patent Office is sufficient to warrant refusal of patent protection to the plaintiff for his invention. The Clasen patent is really not very closely related to plaintiff's purposes. A man working in the art desiring to achieve the kind of result the plaintiff has achieved would not have been guided by the vague references in the Clasen patent to the possibility of forming a porous mass by varying the patent's process. Under normal circumstances, the Clasen product would indeed collapse into a somewhat amorphous snarl of fibrils upon removal of the crystalline canal—formers. It is difficult to imagine why a person concerned with the plaintiff's problem would have looked to Clasen for guidance. The essential purpose of the two patents is wholly different.

The principle difference between the product of Roche and the product of the plaintiff is a matter of size. In many instances a mere matter of size, dimension, or extension is certainly not a matter which would overcome a finding of obviousness by the Patent Office Board of Appeals. In this case, however, a product on the scale of Roche would have no utility whatever for the plaintiff's purpose. Testimony established that absorption does not become effective until a pore size of $10^{-6}$mm. ($100 \overset{O}{A}$) is reached.

Finally, the plaintiff's claims expressly require that the cast body be in a form "substantially reproducing the voids of a micro capillary matrix." It is admitted that Roche's cast body does not reproduce the voids of the matrix, but instead

reproduces the matrix itself by virtue of coating the matrix's inner surfaces.

The Court is mindful of the deference to be accorded the Patent Office's determinations. Abbot et al. v. Coe, 71 U.S.App.D.C. 195, 109 F.2d 449 (1939). In cases where the evidence is clearly insufficient to warrant a refusal of patent protection, however, the Court cannot do anything other than rule in accordance with that evidence.

Some mention should be made of Claim 7. Questions arose as to its definiteness. It depends upon, and is really supplemental to, Claim 21. The Court finds that when taken with Claim 21, Claim 7's language is definite enough to satisfy the requirement of 35 U.S.C. § 112.

The Court will find for the plaintiff and against the defendant, and will authorize the Commissioner of Patents to grant Letters Patent of the United States containing claims 4, 6, 7, 10, 11, 12, 14, 15, 16, 17, 18, 20 and 21 of plaintiff's application Serial No. 635,144.

The above Opinion contains Findings of Fact and Conclusions of Law